IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT WEAVER, :
    Plaintff :    Civil Action No. 1:09-cv-2357
:
v. :    (Chief Judge Kane)
:
LAURA BEVERIDGE, et al., :
    Defendants :

**MEMORANDUM**

Pending before the Court are the motions to dismiss of Defendants James Reeder ("Reeder") and Laura Beveridge ("Beveridge"). (Doc. Nos. 5, 10.) Pursuant to the following analysis, the Court will grant Reeder's motion to dismiss and partially grant Beveridge's motion.

**I.    BACKGROUND**[1]

Plaintiff was convicted of rape-related charges in July 2003. (Doc. No. 1 ¶ 27.) At the time of Plaintiff's prosecution, Beveridge served as a detective for the City of York, Pennsylvania. (Id. ¶ 7.) Reeder served as a prosecutor for York County. (Id. ¶ 8.)

Both Beveridge and Reeder worked directly on Plaintiff's criminal case. Beveridge met with Loretta Nispel on or about July 2002. (Doc. No. 1 ¶ 10.) Nispel is the Plaintiff's step-sister. (Id. ¶ 12.) According to Plaintiff's complaint, Nispel made up allegations that she had been raped by Plaintiff and his father, Robert Weaver Sr. (Id. ¶ 13.) Plaintiff alleges that there were "innumerable conflicts" in Nispel's representations to Beveridge, making her comments "materially unreliable." (Id. ¶ 16.)

---

[1] As is required by the standard of review applicable to motions to dismiss pursuant to Rule 12(b)(6), for purposes of its disposition herein only, the Court accepts Plaintiff's allegations as true. See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

1

In October 2002, Beveridge went to Plaintiff's home and told him that she had a warrant for his arrest and that he must accompany her to the police station for questioning. (Doc. No. 1 ¶¶ 20-21.) Plaintiff alleges that Beveridge's claim that she had a warrant was a lie. (Id. ¶ 34.) After arriving at the police station and questioning Plaintiff, Beveridge asked Plaintiff to sign a consent form so that she could search his house. (Id. ¶ 23.) Plaintiff signed the consent form. (Id.) According to the complaint, Beveridge never searched Plaintiff's home or attempted to collect DNA to corroborate Nispel's claims. (Id. ¶¶ 25-26.)

In addition to the charges against Plaintiff and his father, Betty Weaver was also charged with crimes against Nispel. (Doc. No. 1 ¶ 35.) Nispel claimed that Plaintiff and his father had raped her one week before Weaver Sr. got married to Betty Weaver. (Id. ¶ 36.) The charges against Betty Weaver stemmed from her witnessing the alleged rape in her home and covering it up. (Id. ¶ 37.)

All three Weavers were represented by the same attorney, until Plaintiff acquired different counsel.[2] (Doc. No. 1 ¶ 36.) Betty Weaver's attorney met with Reeder. (Id. ¶ 38.) Subsequent to this meeting, Betty Weaver's attorney encouraged her to tell the police that she was not present during the alleged rape so that the charges against her could be dropped. (Id. at ¶¶ 38-39.) Betty Weaver did so. (Id. ¶ 39.)

During the course of the criminal case, Plaintiff informed all attorneys that were involved that Betty Weaver was at his home during the alleged events and that she could testify to that fact. (Doc. No. 1 ¶ 40.) However, Betty Weaver did not testify at Plaintiff's trial. (Id.) According to the complaint, Plaintiff believes that prosecutor Reeder "arranged the removal and

---

[2] Although Plaintiff claims that he acquired different counsel, it is unclear from the complaint when Plaintiff did so.

denial of plaintiff's access to alibi witness Betty Weaver in abuse of his prosecutorial authority all in return for her changing her story." (Id. ¶ 42.)

In July 2003, Plaintiff was convicted of multiple rape-related charges. (Doc. No. 1 ¶ 27.) Over a period of years, Plaintiff filed three petitions under the Post Conviction Relief Act. (Id. ¶ 28.) On or about February 2009, after going through several layers of appeals, the third such petition was remanded to the York County Common Pleas Court. (Id. ¶¶ 29-32.) Instead of retrying the case, the York County District Attorney's Office chose to *nol pross* the prosecution in May 2009. (Id. ¶ 33.)

Plaintiff filed his complaint in the present case on December 1, 2009, asserting causes of action under the First, Fourth and Fourteenth Amendments. (See Doc. No. 1.) Plaintiff alleges that Beveridge unlawfully arrested him in violation of his Fourth Amendment rights. (Id. ¶¶ 43.) Plaintiff contends that both Beveridge and Reeder maliciously prosecuted him and violated his First Amendment right to have Betty Weaver testify in his criminal trial. (Id. ¶¶ 44, 45, 56.) On December 24, 2009, Reeder filed his motion to dismiss. (Doc. No. 5) On February 25, 2010, Beveridge filed her motion to dismiss. (Doc. No. 10.)

## II. STANDARD OF REVIEW

In analyzing a complaint under Rule 12(b)(6), "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 233 (citation omitted). The plaintiff still must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Additionally, the complaint's "factual allegations must

be enough to raise a right to relief above the speculative level." Id. "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515, F.3d at 234 (internal quotations and citations omitted).

## III. DISCUSSION

The Court will address each of Defendants' motions in turn.

### A. Beveridge's Motion to Dismiss

As the basis of her motion to dismiss, Beveridge argues that Plaintiff's Fourth Amendment claims are time-barred. (Doc. No. 11 at 2-3.) Beveridge avers that Plaintiff knew of any injuries by Beveridge on the dates that the events occurred in October 2002. (Id. at 2.) However, "[d]espite knowing of these claims, Plaintiff waited until December 1, 2009, after the running of the two-year statute of limitations, to file his Complaint." (Id.) In response, Plaintiff avers that the limitations period on his claims did not accrue until after his prosecution was *nol prossed* pursuant to the rule of Heck v. Humprey, 512 U.S. 477 (1994). (Doc. No. 12 at 7.)

In this case, the claims arising from 42 U.S.C. § 1983 are governed by the Pennsylvania two year statute of limitations for personal injury torts. Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d. Cir. 1985) (citing 42 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp. 1984)). Under federal law, the accrual period of a § 1983 claim begins to run from the time "'when the plaintiff knows or has reason to know of the injury which is the basis of the [§] 1983 action.'" Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (citation omitted). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the

4

claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007); see also Dique v. N.J. State Police, 603 F.3d 181, 187-88 (3d Cir. 2010) (following Wallace, 549 U.S. 384).

Plaintiff claims that he was unlawfully arrested by Beveridge in October 2002, yet he failed to bring his claim until seven years had passed. In light of Wallace, Plaintiff's reliance on Heck for his unconstitutional seizure claim is misplaced. As expressed in Wallace, the delayed accrual date under Heck does not apply to Fourth Amendment wrongful arrest claims. See Wallace, 549 U.S. at 397. Therefore, Plaintiff's claims for illegal seizure are time-barred.

In contrast, Plaintiff's malicious prosecution claim has been timely filed. The criminal proceedings against Plaintiff were terminated when the district attorney abandoned the prosecution in May 2009. Pursuant to Heck, Plaintiff brought his claims within two years of the accrual date of his claims. See Heck, 512 U.S. at 489-90 (noting that a malicious prosecution claim does not accrue until criminal proceedings have terminated in plaintiff's favor). The Court will deny Beveridge's motion to dismiss the malicious prosecution claim based on the statute of limitations.[3]

---

[3] For purposes of the motion to dismiss, the Court views as true Plaintiff's averment that the charges against him were resolved in his favor. The Court notes that Plaintiff must still prove as part of his prima facie case that the abandonment of the criminal charges against him acted as an exoneration. As the Third Circuit Court of Appeals has explained:

> [W]hile "a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." Hilfirty v. Shipman, [91 F.3d 573, 579-580 (3d Cir. 1996)]. A nol pros signifies termination of charges in favor of the accused "only when their final disposition is such as to indicate the innocence of the accused" [Restatement (Second) of Torts § 660, cmt. a]. Accordingly, in Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000), we stated that a § 1983 malicious prosecution

5

In her motion to dismiss, Beveridge does not directly address Plaintiff's claim that she interfered with his First Amendment right to call Betty Weaver at trial. This is perhaps so because Plaintiff's complaint makes only passing reference to such a claim, and fails to directly assert it under Count I of the complaint. (See Doc. No. 1.) Yet the Court will address the claim *sua sponte* because there is a jurisdictional question over whether Plaintiff has standing to assert it. See Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir. 2005) ("[W]e are required to raise issues of standing *sua sponte* if such issues exist.") (internal quotation marks and citations omitted).

A person may have a cognizable First Amendment claim if his right to testify is curtailed by governmental interference. As the Seventh Circuit has recognized, "[t]he Constitution prevents governmental actors from forbidding, or penalizing, speech that is protected under the [F]irst [A]mendment." Fairley v. Andrews, 578 F.3d 518, 525 (7th Cir. 2009) (noting that such a claim is framed as a "prior restraint," rather than as a First Amendment retaliation claim). Additionally, the Third Circuit has recognized that "where one enjoys a right to speak, others hold a 'reciprocal right to receive' that speech, which 'may be asserted' in court." Pa. Family Inst., Inc. v. Black, 489 F.3d 156, 165 (3d Cir. 2007) (quoting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 757 (1976)). However, "[a] precondition of asserting this 'right to receive[]'. . . is the existence of a 'willing speaker.'" Id. (quoting Va. State Bd. of Pharmacy, 425 U.S. at 756). If a plaintiff fails to satisfy this precondition and clearly establish a "willing speaker," a district court must dismiss for lack of standing. Id. at 166-67

> plaintiff "must be innocent of the crime charged in the underlying prosecution."

See Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (emphasis omitted).

6

(noting that to establish the existence of a willing speaker, a plaintiff must "at least demonstrate that but for a regulation, a speaker subject to it would be willing to speak").

Whether Betty Weaver was a willing speaker is not clearly stated in Plaintiff's complaint. To the extent Plaintiff can do so consistent with the Rules of Civil Procedure, Plaintiff will be given leave to amend his complaint to show that he has standing to assert a First Amendment claim based on Betty Weaver's failure to testify. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

**B.     Reeder's Motion to Dismiss**

The Court finds that Reeder is entitled to prosecutorial immunity. "More than a mere defense to liability, prosecutorial immunity embodies the right not to stand trial, and is properly raised in a Rule 12(b)(6) motion to dismiss." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations and quotation marks omitted). In Odd, the Third Circuit explained the analysis that a Court is to undergo in determining whether immunity should apply:

> A prosecutor bears the "heavy burden" of establishing entitlement to absolute immunity. In light of the Supreme Court's "quite sparing" recognition of absolute immunity to § 1983 liability, we begin with the presumption that qualified rather than absolute immunity is appropriate.
>
> To overcome this presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question. This inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it." Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. Thus, immunity attaches to actions "intimately associated with the judicial phases of litigation," but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.

538 F.3d at 208 (internal citations omitted).

In the present case, any alleged misconduct by Reeder occurred pursuant to initiating the prosecution against Plaintiff. Therefore, Reeder is entitled to absolute immunity, and the claims against him must be dismissed. See Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) (finding that a prosecutor is absolutely immune for eliciting "false testimony in connection with [a] prosecution"); see also Yarris v. County of Delaware, 465 F.3d 129, 139 (3d Cir. 2006) (applying absolute immunity to the prosecutor's securing of false statements where it was clear that the prosecutor's involvement occurred after the prosecution had begun).

### C. Betty Weaver

According to Plaintiff's most recent filing with the Court, the third defendant in this action, Betty Weaver, passed away in February 2010. (Doc. No. 12 at 5.) Plaintiff has asserted claims against Betty Weaver for unlawful conversion and conspiring in his malicious prosecution. (See Doc. No. 1 ¶¶ 58-59.) Pursuant to Rule 25(a) of the Federal Rules of Civil Procedure, the Court will order Plaintiff to substitute a proper party. See Fed. R. Civ. P. 25(a); see also 42 Pa. Cons. Stat. Ann. § 8302 (West 2007) ("All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.").

**III.    CONCLUSION**

Based on the Court's preceding analysis, the Court will grant Reeder's motion to dismiss based on prosecutorial immunity.  The Court will grant Beveridge's motion in part, dismissing Plaintiff's claim for unlawful seizure.  The Court will allow Plaintiff the opportunity to amend his complaint to show that he has standing to assert a First Amendment claim as to Betty Weaver's testimony.  An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT WEAVER, :
    Plaintff : Civil Action No. 1:09-cv-2357
 :
v. : (Chief Judge Kane)
 :
LAURA BEVERIDGE, et al., :
    Defendants :

## ORDER

**AND NOW**, on this 15th day of July 2010, it is **HEREBY ORDERED THAT**:

1. Defendant James Reeder's motion to dismiss is **GRANTED**.

2. Defendant Laura Beveridge's motion to dismiss is **GRANTED IN PART**. Plaintiff's Fourth Amendment wrongful arrest claim is **DISMISSED**.

3. Plaintiff is allowed leave to amend his complaint to show that he has standing to assert a First Amendment claim based on Betty Weaver's failure to testify at his criminal trial.

4. Plaintiff must substitute a proper party for Defendant Betty Weaver. See Fed. R. Civ. Pro. 25(a).

                                      S/ Yvette Kane
                                      Yvette Kane, Chief Judge
                                      United States District Court
                                      Middle District of Pennsylvania